1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MIGUEL ENRIQUE DIAZ,                )   No. C 06-03162 JF (PR)
                                    )
            Petitioner,             )   ORDER DENYING PETITION FOR
                                    )   WRIT OF HABEAS CORPUS;
    vs.                             )   DENYING CERTIFICATE OF
                                    )   APPEALABILITY
TOM CAREY, Warden,                  )
                                    )
            Respondent.             )
_____)

Petitioner, a California prisoner proceeding pro se, filed a writ of habeas corpus
pursuant to 28 U.S.C. § 2254 challenging his state conviction. The Court ordered
Respondent to show cause why the petition should not be granted. Respondent filed an
answer and a supporting memorandum of points and authorities addressing the merits of
the petition, and Petitioner filed a traverse. Having reviewed the papers and the
underlying record, the Court concludes that Petitioner is not entitled to habeas corpus
relief and will deny the petition.

**BACKGROUND**

The following facts are taken from the opinion of the California Court of Appeal
affirming Petitioner's conviction:

[Petitioner] and Jane Doe began seeing each other in January

1999.  For a while they shared an apartment, but in October 2000 the relationship began to sour.  [Petitioner] was using drugs.  Doe moved out in March 2001, but continued to provide [Petitioner] with financial assistance and maintained a friendship with him.  In July 2001, Doe was living in South San Francisco and [Petitioner] in San Francisco.  [Petitioner] called Doe around 7:00 a.m. on the morning of July 12.  He told her to come to his residence, because he was going to ram her parents' house with a car.  Doe's sister L.P. lived with her parents.  L.P. had initially introduced [Petitioner] and Doe, and [Petitioner] had been expressing animosity toward L.P.

Doe went to meet [Petitioner], picked him up, and drove him to the drug program he was attending.  However, [Petitioner] refused to get out of the car, and Doe drove him around San Francisco and eventually took him home.  She tried to leave, but he took her keys.  They went to his room, where he took drugs.  They drove around the city again, during which time [Petitioner] showed Doe two knives he was carrying and threatened to "do something to the police, so the police would shoot him."  [Petitioner] also attempted to steer the car into a pole, but Doe slammed on the brakes.  At one point while [Petitioner] was driving, he threatened to ram Doe's ex-husband's house, but drove Doe home instead.  There, he took a kitchen knife and tried to force Doe to push the knife into him.  Finally, he left in Doe's car.  She filed a police report.

Also on July 12, 2001, [Petitioner] began harassing Doe's sister L.P. with phone calls, threatening her daughters and her family.  Doe learned about these calls and was angry, but continued to try to be a friend to [Petitioner], helping him move and get into another drug program.  However, in September Doe told [Petitioner] she was tired of helping him, and asked him to stop contacting her and her sister.  A few weeks later, [Petitioner] came to her apartment, but she refused to speak to him.  That night, someone broke her car windows.  In October, L.P. obtained a restraining order against [Petitioner] after he went to her daughters' school and shouted threats, which were relayed to her daughters.

Around 5:00 a.m. on November 17, 2001, L.P. was awakened in her ground floor apartment at the family home by "a banging and then like running around upstairs."  She ran upstairs, where her brother had dialed 911.  He told her her car and the house were on fire; L.P. looked out the window and saw her car, parked in the driveway, in flames as well as the garage door in front of it.  An arson investigator concluded the fire had been set with gasoline at three separate points, one on the garage door and two at the front of the car.

Around 5:15 a.m. on the same morning, Doe was awakened by knocks on her window and door.  She saw [Petitioner] through the sliding glass door, and told him she did not want to talk to him.  However, when he said he had one of her sons, she let him in.  He began pouring a container of gasoline in the living room.  Doe ran to the bedroom to call 911.  [Petitioner] pursued her, took the phone away, threw her on the bed, and choked her.  He told her he had gone to L.P.'s house and "poured gasoline over there" or "set fire" (in her testimony, Doe could not recall his words exactly).  Doe managed to get away, then saw [Petitioner] throw something into the living room, which immediately burst into flame.  Doe called 911 again, as [Petitioner] shut the bedroom door.

1
2
3
4
5
6
7
8

> Doe tried to open a window to escape, but [Petitioner] pulled her back three or four times. He told her they would both die there. Doe managed to break the window, and heard a neighbor shouting. She crawled out, with [Petitioner] climbing on top of her. [Petitioner] began to rush away, but stumbled, caught himself, and walked normally toward the front of the building. The neighbor's son, a recent graduate of the California Highway Patrol Academy, was in the driveway and saw [Petitioner] walk around the corner of the building. The officer identified himself and ordered [Petitioner] to get down. [Petitioner] did not comply, and struggled when the officer grabbed him, but with the assistance of another neighbor [Petitioner] was restrained until the South San Francisco police arrived to arrest him.
>     Doe's car, parked nearby on the street, was found with gasoline poured over it.

9   See People v. Diaz, No. A101811, slip op. at 1-3 (Feb. 3, 2005) (Resp't, Ex. 10).

10      In December 2002, a San Mateo Superior Court jury convicted Petitioner of the

11   following offenses: attempted murder, assault, infliction of corporal injury on a former

12   cohabitant, false imprisonment, dissuading a witness, burglary, three counts of arson and

13   one of attempted arson, making criminal threats, battery on a peace officer, resisting a

14   peace officer, and stalking. (Resp't, Ex. 2, Vol. 2 at 269-85.) The jury found Petitioner

15   not guilty of several additional charges, including kidnaping, vandalism, and making

16   criminal threats. (Id. at 279, 281, 286-88.) On February 28, 2003, Petitioner was

17   sentenced to life in prison with the possibility of parole for the attempted murder

18   conviction and an additional determinate term of nine years, eight months for the other

19   offenses. (Id. at 427-29.)

20      The California Court of Appeal affirmed the judgment on February 3, 2005, and

21   the California Supreme Court denied review on April 27, 2005. Petitioner originally filed

22   a petition for writ of habeas corpus in this Court on May 11, 2006, which was stayed to

23   permit Petitioner to exhaust his state remedies. Petitioner then filed a state habeas

24   petition which was denied by the superior court on June 23, 2006. The California

25   Supreme Court denied review on August 27, 2008. Petitioner filed the instant amended

26   petition, (Docket No. 12), on September 29, 2008.

27   ///

28   ///

**DISCUSSION**

## I.    <u>Standard of Review</u>

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings.  Under the AEDPA, a federal court may not grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>  "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id.</u> at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" <u>Id.</u> at 409.  In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1054 (9th Cir. 2003).  The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two

1  standards . . . are not the same.  The gloss of clear error fails to give proper deference to
2  state courts by conflating error (even clear error) with unreasonableness."  <u>Lockyer v.</u>
3  <u>Andrade</u>, 538 U.S. 63, 75 (2003).[1]

4  A federal habeas court may grant the writ if it concludes that the state court's
5  adjudication of the claim "resulted in a decision that was based on an unreasonable
6  determination of the facts in light of the evidence presented in the State court
7  proceeding."  28 U.S.C. § 2254(d)(2).  The Court must presume correct any determination
8  of a factual issue made by a state court unless the Petitioner rebuts the presumption of
9  correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

10  **II.**   **Legal Claims and Analysis**

11  Petitioner asserts the following claims for habeas relief: (1) ineffective assistance
12  of trial counsel; (2) juror misconduct; (3) ineffective assistance of appellate counsel for
13  failing to raise additional claims; (4) improper jury instructions; (5) abuse of discretion by
14  the trial court in sentencing; (6) "<u>Cunningham/Apprendi</u>" error in sentencing; (7) actual
15  innocence; and (8) cumulative error.[1]

16  A.   <u>Ineffective Assistance of Trial Counsel</u>

17  Petitioner claims that his Sixth and Fourteenth Amendment rights were violated as
18  a result of the ineffective assistance of his trial counsel.  (Am. Pet. at 34.)  Petitioner
19  asserts that trial counsel failed to investigate and present a mental state defense related to
20  Petitioner's diabetes.  (<u>Id.</u> at 36.)  In addition, Petitioner asserts that trial counsel
21  improperly acquiesced to the trial court's order to stop exercising peremptory challenges.
22  (<u>Id.</u> at 40.)

23  The trial court found that Petitioner had failed to present sufficient evidence in
24  support of his claim that trial counsel was ineffective.  (Am. Pet., Ex. J. at 5.)  The court
25  concluded that there was no evidence that Petitioner suffered from uncontrolled diabetes

26

27  _____

28  [1] Petitioner raised claims 1, 2, 3, 4 and 7 in his state habeas petition and claims 5
and 6 in his direct appeal.

resulting in psychotic behavior at the time of his crime.  (Id.)  In addition, the court found

that Petitioner failed to show that the court had ordered counsel to cease exercising

peremptory challenges or that such an order rendered the result of the trial unreliable.

(Id.)

The Sixth Amendment right to counsel guarantees not only assistance, but

effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial

cannot be relied upon as having produced a just result."  Id.  In order to prevail on a Sixth

Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First,

he must establish that counsel's performance was deficient, i.e., that it fell below an

"objective standard of reasonableness" under prevailing professional norms.  Id. at 687-

88.  Counsel's performance is presumed to fall "within a wide range of reasonable

representation."  Hoffman v Arave, 455 F.3d 926, 931 (9th Cir. 2006) (quoting United

States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1987)).  Second, petitioner

must establish that he was prejudiced by counsel's deficient performance, i.e., that "there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  Strickland, 466 U.S. at 694.  Petitioner must

show that counsel's errors were so serious as to render the results of the trial unreliable.

Id. at 688.

Counsel must, at a minimum, conduct a reasonable investigation enabling him to

make informed decisions about how best to represent his client.  Avila v. Galaza, 297

F.3d 911, 924 (9th Cir. 2002).  Strickland directs that "'a particular decision not to

investigate must be directly assessed for reasonableness in all the circumstances, applying

a heavy measure of deference to counsel's judgments.'"  Silva v. Woodford, 279 F.3d

825, 836 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 491).

In a federal habeas challenge to a state criminal judgment, a state court's legal

conclusion that counsel rendered effective assistance is not binding on the federal court.

1   Both the performance and the prejudice components of the ineffectiveness inquiry are

2   mixed questions of law and fact.  <u>See</u> <u>Strickland</u>, 466 U.S. at 698.  Claims of ineffective

3   assistance therefore require an independent review of the record.

4        Petitioner fails to show that trial counsel rendered ineffective assistance by failing

5   to investigate a mental state defense related to Petitioner's diabetes.  As a threshold

6   matter, Petitioner has failed to present any evidence that he actually suffered from

7   diabetes at the time of his alleged crimes.  He has presented only a copy of an insulin card

8   issued in 2006, five years after the date of the underlying offenses.  (Trav. at 17.)

9   Moreover, Petitioner has not offered any evidence that he was diagnosed with diabetes by

10  a medical professional.  Without this fundamental evidence, Petitioner cannot show that

11  his trial counsel was ineffective for failing to investigate diabetes-related defenses.

12       Even assuming that Petitioner was a diabetic in 2001, and that diabetes may cause

13  psychosis as a result of abnormal blood sugar levels, Petitioner has failed to present any

14  evidence that he was suffering from any such psychosis at the time of his crimes.  (Am.

15  Pet. at 38.)  He offers no medical records supporting an inference that he ever has

16  suffered from a diabetic psychosis.  Based on this record, trial counsel had no reasonable

17  basis for investigating any diabetes-related mental health defense, and his failure to do so

18  did not constitute ineffective assistance.  <u>Strickland</u>, 466 U.S. at 687-88.

19       Moreover, Petitioner has failed to show that he was prejudiced under <u>Strickland</u>'s

20  second prong.  466 U.S. at 686.  Petitioner's trial counsel did present a mental state

21  defense, arguing that continuous cocaine use in combination with use of the prescription

22  drug Paxil caused Petitioner to become psychotic and rendered him incapable of forming

23  the requisite specific intent at the time of his crimes.  (<u>See</u> Resp't, Ex. 1, Vol. 11-12.)

24  The jury rejected this defense, and Petitioner does not contend that trial counsel's conduct

25  in presenting the defense was defective.  (Am. Pet. at 36-40.)  Trial counsel clearly

26  presented an adequate mental state defense, and he did not render ineffective assistance

27  merely because a similar defense based on diabetes might have been available.  <u>Cf.</u>

28  <u>Plascencia v. Alameda</u>, 467 F.3d 1190, 1198-1201 (9th Cir. 2006) (counsel's alleged

1  failure to investigate informants background, motives and interests not prejudicial where

2  trial record showed that counsel vigorously attacked their credibility in several other ways

3  to show that their testimony was fabricated).  Petitioner has failed to show a reasonable

4  probability that the result of his trial would have been different if his mental state defense

5  had been based on psychosis caused by his alleged blood-sugar imbalance instead of a

6  drug interaction.

7       Petitioner also claims that his trial counsel was ineffective because he agreed to the

8  trial court's order that he cease exercising peremptory challenges.  (Am. Pet. at 40.)

9  Assuming that such an order was given by the trial court and that counsel should not have

10  acquiesced to it, Petitioner has failed to show that but for such acquiescence the result of

11  the proceeding would have been different.  Strickland, 466 U.S. at 694.  While the right to

12  exercise peremptory challenges is grounded in the Sixth Amendment, the loss of a

13  peremptory challenge as such does not violate the Constitution as long as the jury that is

14  ultimately selected is impartial.  See Martinez-Salazar, 528 U.S. 304, 313 (2000); Davis

15  v. Woodford, 384 F.3d 628, 643 (9th Cir. 2004) ("we cannot say that counsel was

16  deficient in declining to exercise peremptory challenges").  Petitioner has not shown that

17  trial counsel's failure to exercise all peremptory challenges rendered the results of his trial

18  unreliable.

19       B.     Juror Misconduct

20       Petitioner's second claim is that an alternate juror committed prejudicial

21  misconduct by "physically comforting" a prosecution witness, depriving Petitioner of his

22  Sixth Amendment right to an impartial jury.  (Am. Pet. at 51.)  Petitioner alleges the trial

23  court erred by failing to conduct an evidentiary hearing to determine the impact of the

24  alleged misconduct on the other jurors.  (Id.)

25       Following testimony by the victim's sister about threatening phone calls made to

26  the witness by Petitioner, an alternate juror allegedly patted the witness several times on

27  the shoulder as the jurors exited the courtroom.  (Resp't, Exh. 1, Vol. 7 at 519.)  Based on

28  the record, Petitioner was the only witness to the interaction.  (Id.)  After bringing the

1    incident to the trial court's attention, Petitioner's counsel moved for an evidentiary

2    hearing to determine the impact of the interaction, if any, on the other members of the

3    jury. (Id.) Counsel also moved for a mistrial. (Id.) The trial court accepted that the

4    incident had occurred but denied both motions, finding that the incident "would not

5    influence the jury in any way." (Id. at 521.) The trial court emphasized that in light of

6    the provocative phone calls that were played for the jury, a brief showing of emotion by a

7    single juror member was insignificant in the context of the case as a whole. (Id. at 518.)

8        In Petitioner's state habeas proceedings, the trial court found that Petitioner had

9    provided only documentary support that an alternate juror made "a physical expression of

10   sympathy towards a prosecution witness," and that this did not amount to juror

11   misconduct. (Am. Pet., Ex. J. at 5.) The court noted that Petitioner failed to allege that

12   anyone other than himself witnessed the gesture, negating any claim of prejudice. (Id.)

13       The Supreme Court has held that any possibly prejudicial communications

14   between a juror and a witness "are absolutely forbidden and invalidate the verdict, at least

15   unless their harmlessness is made to appear." Mattox v. United States, 146 U.S. 140, 150

16   (1892). Accordingly, any unauthorized communication between a juror and witness is

17   presumed to be prejudicial. Caliendo v. Warden of Calif. Men's Colony, 365 F.3d 691,

18   696 (9th Cir. 2004). However, chance encounters between the jury members and

19   witnesses are inevitable and "it is virtually impossible to protect jurors from every contact

20   or influence that might theoretically affect their vote." Id. (quoting Gonzalez v. Beto, 405

21   U.S. 1052, 1058 (1972)). Before conduct is presumed prejudicial, petitioner must show

22   that the contact in question raises a risk of influencing the verdict. Id. In other words,

23   Petitioner must offer sufficient evidence to "trigger the presumption of prejudice." Id.

24   (quoting United States v. Day, 830 F.2d 1099, 1103-1104 (10th Cir. 1987)).

25       In determining whether an unauthorized communication raises a risk of tainting the

26   verdict, courts should consider factors such as whether the unauthorized communication

27   concerned the case, the length and nature of the contact, the identity and role at trial of the

28   parties involved, evidence of actual impact on the juror, and the possibility of eliminating

prejudice through a limiting instruction.  See Id. at 697-98.  In weighing these factors, great deference should be given to the trial court's determination.  Rinker v. County of Napa, 724 F.2d 1352, 1354 (9th Cir. 1983).

A court confronted with a plausible claim of juror bias generally will conduct an evidentiary hearing to determine the extent of the bias.  Davis v. Woodford, 384 F.3d 628, 652-53 (9th Cir. 2004).  However, a court need not hold an evidentiary hearing every time there is an allegation of jury misconduct.  See United States v. Angulo, 4 F.3d 843, 847 (9th Cir. 1993).  To determine whether an evidentiary hearing is necessary to evaluate the impact of unauthorized communication, a court must consider the content of the allegations, the seriousness of the alleged misconduct, and the credibility of the source. United States v. Brande, 329 F.3d 1173, 1176-77 (9th Cir. 2003).  A hearing is required only if there is a "reasonable possibility" of bias.  United States v. Ivester, 316 F.3d 955, 960 (9th Cir. 2003).

Here, Petitioner has not shown that an evidentiary hearing was warranted. Petitioner has failed to present any evidence that other jurors were influenced by the incident or even witnessed it.  At trial, defense counsel conceded that the seated jurors "were directed away" from the witness at the time of the incident but that another alternate juror might have seen it.  (Resp't, Exh. 1, Vol. 7 at 516.)  Considering that the contact was brief and witnessed if at all only by another alternate juror who did not decide the case, as well as the and the lack of evidence of any actual influence on the jurors who did decide the case, it does not appear that the contact raised a risk of influencing the verdict.  Caliendo, 365 F.3d at 696.  Accordingly, the trial court's determination that an evidentiary hearing was not warranted was appropriate.  Cf. Brande, 329 F.3d at 1177 (explaining evidentiary hearing not necessary where "exact scope and nature" of improper contact apparent).

While extrinsic communication between a juror and witness generally may be presumed prejudicial, the trial judge in this case reasonably determined the conduct in question did not raise a significant possibility of bias.  Ivester, 316 F.3d at 960.  This

1   Court must defer to the trial court's determination unless that determination was clearly

2   erroneous.  Caliendo, 365 F.3d at 696 (explaining deference must be accorded to the trial

3   judge "who is in the best position to determine whether possibly prejudicial misconduct

4   took place").  Therefore, the state court's finding that the alleged juror misconduct was

5   non-prejudicial was not contrary to or an unreasonable application of clearly established

6   federal law, nor based on an unreasonable determination of the facts presented.  See 28

7   U.S.C. § 2254(d).

8             C.     Ineffective Assistance of Appellate Counsel

9         Petitioner next claims that his appellate counsel failed to raise several meritorious

10  issues on direct appeal, thereby violating Petitioner's right under the Sixth and Fourteenth

11  Amendments.  (Am. Pet. at 61.)  He alleges that his appellate counsel failed to "argue

12  ineffective assistance of trial counsel, juror misconduct, speedy trial, evidentiary 402(b)

13  abuse of discretion, instructional error and refusal to call alibi witness."  (Id.)

14         In rejecting this claim, the superior court found that Petitioner had failed to show

15  that any of the issues Petitioner urged appellate counsel to raise were nonfrivolous.  (Am.

16  Pet., Ex. J. at 6.)  In addition, the court found that appellate counsel had acted as an

17  "active advocate" by raising and arguing several issues on appeal and that Petitioner was

18  "not entitled to more."  (Id.)

19         The Due Process Clause of the Fourteenth Amendment guarantees a criminal

20  defendant the effective assistance of counsel on his first appeal as of right.  See Evitts v.

21  Lucey, 469 U.S. 387, 391-405 (1985).  Like claims of ineffective assistance at trial,

22  claims of ineffective assistance of appellate counsel are reviewed under the Strickland

23  standard.  466 U.S. at 668; Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

24  Petitioner thus must show that counsel's performance fell below an objective standard of

25  reasonableness and that there is a reasonable probability that, but for counsel's errors,

26  Petitioner would have prevailed on appeal.  Id. at 1434 n.9 (citing Strickland, 466 U.S. at

27  688).

28         Appellate counsel does not have a constitutional duty to raise every nonfrivolous

1    issue requested by a defendant.  See Jones v. Barnes, 463 U.S. 745, 751-54 (1983).

2    Frequently, appellate counsel will fail to raise an issue because he foresees little

3    likelihood of success on that issue.  Miller, 882 F.2d at 1434.  "The weeding out of

4    weaker issues is widely recognized as one of the hallmarks of effective appellate

5    advocacy."  Id.

6           Petitioner contends that his appellate counsel was ineffective in failing to raise

7    claims of ineffectiveness of trial counsel and juror misconduct on direct appeal.  As

8    discussed above, Petitioner failed to show that trial counsel was ineffective or that

9    Petitioner was prejudiced by juror misconduct.  As will be discussed below, see infra at

10   13-14, Petitioner also has failed to show that an attempted voluntary manslaughter

11   instruction was warranted.  In light of these determinations, appellate counsel's actions

12   were not objectively unreasonable, nor was Petitioner prejudiced by appellate counsel's

13   failure to raise these issues on direct appeal.

14          Petitioner also alleges that appellate counsel was ineffective by failing to raise

15   claims regarding a "speedy trial, evidentiary 402(b) abuse of discretion and refusal to call

16   alibi witness."  (Am. Pet. at 61.)  Petitioner has failed to develop these claims with any

17   factual specificity by identifying evidence demonstrating that any of them are

18   meritorious.  Petitioner's entire factual showing with respect to this issue is a letter from

19   his trial counsel listing potential issues to be considered on direct appeal.  (Am. Pet., Ex.

20   C at 3.)

21          D.     Improper Jury Instructions

22          Petitioner claims that the trial court committed prejudicial error and violated his

23   Sixth Amendment rights by failing to instruct the jury on the lesser included offense of

24   attempted voluntary manslaughter.  (Am. Pet. at 73.)  Petitioner contends that the trial

25   court had an obligation to instruct the jury on all lesser included offenses of attempted

26   murder, including attempted voluntary manslaughter.  (Id.)  In support of his claim,

27   Petitioner provides excerpts from the trial transcript in which the trial court denied his

28   request to instruct on a lesser included offense.  (Am. Pet., Ex. D at 1.)  Petitioner also

1    provides two sworn affidavits alleging that at least one juror would have considered

2    convicting on a lesser charged offense if one had been presented.  (Am. Pet., Exh. E at 1-

3    4.)

4        In rejecting this claim, the superior court found the record did not support an

5    attempted voluntary manslaughter instruction.  (Am. Pet., Ex. J at 7.)  The court also

6    concluded that evidence that a single juror might have considered a lesser included

7    offense was insufficient to warrant habeas relief.  (Id.)

8        Generally, the failure of a state trial court to instruct on lesser-included offenses in

9    a non-capital case does not present a federal constitutional claim.  See Solis v. Garcia,

10   219 F.3d 922, 929 (9th Cir. 2000).  However, "the defendant's right to adequate jury

11   instructions on his or her theory of the case might, in some cases, constitute an exception

12   to the general rule."  Solis, 219 F.3d at 929 (citing Bashor v. Risley, 730 F.2d at 1240).

13   Solis suggests strongly that there must be substantial evidence to warrant the instruction

14   on the lesser included offense.  See Id. at 929-30 (no duty to instruct on voluntary

15   manslaughter as lesser included offense to murder because evidence presented at trial

16   precluded a heat of passion or imperfect self-defense instruction; no duty to instruct on

17   involuntary manslaughter because evidence presented at trial implied malice).

18       Here, Petitioner has failed to demonstrate that an attempted voluntary

19   manslaughter instruction was warranted.  Voluntary manslaughter is an unlawful killing

20   done without malice, committed either in the heat of passion, or in the unreasonable belief

21   that self-defense is necessary.  Solis, 219 F.3d at 929.  The evidence presented with

22   respect to Petitioner's actions does not support a heat of passion or an imperfect self-

23   defense instruction.  Petitioner had harassed the victim and her family continuously for

24   several months prior to the arson attacks.  On the morning of November 17, 2001,

25   Petitioner chased down the victim in her home, choked her, set fire to her residence and

26   then pulled her back through the window several times while she attempted to escape the

27   burning building.  Thus the evidence more than amply supports the jury's finding that

28   Petitioner engaged in a series of deliberate actions with the intent to kill.  On these facts,

the trial court's determination that an attempted voluntary manslaughter instruction was

unjustified was not clearly erroneous.

E.    Sentencing Errors

Petitioner claims that the trial court's failure to submit aggravating factors

regarding the arson to a jury was prejudicial in light of Cunningham v. California, 549

U.S. 270, 274-275 (2007).  (Am. Pet. at 89.)  He also claims that the trial court's

imposition of consecutive terms for his additional offenses was an abuse of discretion.

(Id.)

1.    Aggravating Factor

The trial court sentenced Petitioner to the maximum term of eight years for the

arson, finding "the crime involved a threat of great bodily harm in setting the fire and, in

that fashion, disclosed a high degree of cruelty, viciousness and callousness."  (Resp't,

Ex.1, Vol. 17 at 1980.)  Petitioner contends that the trial court's failure to submit this

issue to the jury was structural error and warrants reversal per se.  (Am. Pet. at 92.)

"Other than the fact of a prior conviction, any fact that increases the penalty for a

crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. 466, 488-90 (2000).  The

"statutory maximum" for Apprendi purposes is the maximum sentence a judge could

impose based solely on the facts reflected in the jury verdict or admitted by the defendant;

that is, the relevant "statutory maximum" is not the sentence the judge could impose after

finding additional facts, but rather is the maximum he or she could impose without any

additional findings.  Blakely v. Washington, 542 U.S. 296, 303-04  (2004).  The Supreme

Court has clarified that the middle term specified in California's statutes is the relevant

statutory maximum.  Cunningham, 549 U.S. at  273.  Fact-finding to elevate a defendant's

sentence beyond the prescribed middle term falls solely within the province of the jury.

Id. at 292.

However, contrary to Petitioner's assertion, failure to submit a sentencing factor to

the jury is not structural error; rather, it is trial error and thus is subject to harmless-error

1    analysis.  Washington v. Recuenco, 548 U.S. 212, 221-22 (2006).  Here, the state

2    appellate court, applying pre-Cunningham precedent, determined that the trial court did

3    commit constitutional error by failing to submit the issue to the jury but that the error was

4    "harmless beyond a reasonable doubt" under Chapman v. California, 386 U.S. 18, 24

5    (1967). (Resp't, Ex. 10 at 9.)  While the Chapman standard remains applicable to criminal

6    convictions challenged on direct appeal, the Supreme Court has adopted a less strict

7    standard for federal habeas review.  See Brecht v. Abrahamson, 507 U.S. 619, 637-38

8    (1993).  A habeas petitioner is not entitled to relief unless the trial error "'had substantial

9    and injurious effect or influence in determining the jury's verdict.'"  Id. at 637 (quoting

10   Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  In other words, state prisoners

11   seeking federal habeas relief may obtain plenary review of constitutional claims of trial

12   error, but are not entitled to habeas relief unless the error resulted in "actual prejudice."

13   Id. (citation omitted).

14        Here, the trial court, rather than the jury, found additional facts as aggravating

15   factors and sentenced Petitioner to more than the relevant statutory maximum on the

16   arson charge.  Petitioner was convicted of arson of an inhabited structure, which

17   mandated a middle term of five years in state prison.  Cal. Penal Code § 451(b). The trial

18   court, finding that the crime involved a "high degree of cruelty, viciousness and

19   callousness," imposed the upper term sentence of eight years.  (Resp't, Ex.1, Vol. 17 at

20   1980.)  The trial court erred by elevating Petitioner's sentence beyond the relevant

21   statutory maximum without submitting to the jury the issue of whether the crime involved

22   a threat of great bodily harm.  Cunningham, 549 U.S. at 273.

23        This Court thus must then assess whether the trial court's error had a "substantial

24   and injurious effect" on Petitioner's sentence.  Fry v. Pliler, 551 U.S. 112, 120 (2007).

25   Under Fry, relief is warranted when there is "grave doubt" that a jury would have found

26   the relevant aggravating factor beyond a reasonable doubt.  Butler v. Curry, 528 F.3d 624,

27   648 (9th Cir. 2008).  "Grave doubt exists when, 'in the judge's mind, the matter is so

28   evenly balanced that he feels himself in great equipoise as to the harmlessness of the

1   error.'" <u>Id.</u> (quoting <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436 (1995)).

2       Here, there is little doubt that had the matter been submitted to it, the jury would

3   have found Petitioner's crime did involve a threat of great bodily harm.  Petitioner had

4   harassed the victim for several months prior to the arson attacks.  He set fire to the

5   victim's residence early in the morning, when it was highly likely that she and her family

6   were at home, and the victim's car was parked in the driveway.  Such evidence was more

7   than sufficient to permit a jury to find beyond a reasonable doubt that the arson involved a

8   threat of great bodily harm to the victim and her family, and therefore exhibited "a high

9   degree of cruelty, viciousness or callousness." Cal. Rules of Ct. 4.421(b)(1).  Because

10  Petitioner has not shown that he was prejudiced by the trial court's error, the state

11  appellate court's rejection of this claim was not contrary to or an unreasonable application

12  of clearly established federal law, nor based on an unreasonable determination of the facts

13  presented.  <u>See</u> 28 U.S.C. § 2254(d).

14              2.   <u>Consecutive Terms</u>

15      The trial court ordered Petitioner to serve consecutive terms because "the manner

16  in which the crime was carried out indicates plan, sophistication or professionalism . . .".

17  (Resp't, Ex.1, Vol. 17 at 1982.)  Petitioner contends that the Sixth Amendment requires

18  that the decision to impose consecutive sentences be made by the jury rather than the

19  judge.  (Am. Pet. at 99.)  The state appellate court, in rejecting this claim, determined that

20  the trial court was within its discretion to impose consecutive determinate terms for

21  Petitioner's additional offenses.  (Resp't, Ex. 10 at 10.)

22       The application of <u>Apprendi</u> and its progeny is limited to sentencing decisions

23  historically reserved for the jury.  <u>See</u> <u>Oregon v. Ice</u>, 129 S. Ct. 711, 717-18 (2009).  The

24  Constitution does not inhibit judges, rather than juries, from finding facts necessary to

25  impose consecutive sentences.  <u>See id.</u>  Accordingly, Petitioner has failed to demonstrate

26  a violation of his constitutional rights.  The trial judge was well within his discretion to

27  impose consecutive sentences for Petitioner's additional arson, stalking and attempted

28  arson convictions, and the state court's rejection of this claim was not contrary to or an

1    unreasonable application of clearly established federal law.  <u>See</u> 28 U.S.C. § 2254(d).

2        F.    <u>Actual Innocence</u>

3        Petitioner claims that he is innocent of all charges because he lacked the requisite

4    mental culpability as a result of his uncontrolled diabetes.  (Trav. at 9.)  In rejecting this

5    claim, the superior court emphasized that Petitioner had failed to show that he had been

6    diagnosed with diabetes, that diabetes may cause psychotic behavior or that he suffered

7    from such a psychosis at the time of his offenses.  (Am. Pet., Ex. J at 8.)

8        As discussed in connection with Petitioner's first claim, <u>see</u> *supra* at 5-7, Petitioner

9    has failed to present any evidence showing that he lacked the requisite mental capacity for

10   his crimes as a result of abnormal blood sugar levels from diabetes.  Petitioner has offered

11   no medical documentation that he was a diabetic in November 2001 much less that he

12   suffered from a diabetic psychosis at the time of his crimes.  Accordingly, the superior

13   court's denial of his actual innocence claim was not contrary to or an unreasonable

14   application of clearly established federal law, nor based on an unreasonable determination

15   of the facts presented.  <u>See</u> 28 U.S.C. § 2254(d).

16       G.    <u>Cumulative Error</u>

17       Finally, Petitioner claims that he is entitled to habeas relief as a result of

18   cumulative error.  (Am. Pet. at 102.)

19       In some cases, although no single trial error is sufficiently prejudicial to warrant

20   reversal, the cumulative effect of several errors may still prejudice a defendant so much

21   that his conviction must be overturned.  <u>See</u> <u>Alcala v. Woodford</u>, 334 F.3d 862, 893-95

22   (9th Cir. 2003).  However, where only one single constitutional error exists, nothing can

23   amount to the level of a cumulative error.  <u>U.S. v. Sager</u>, 227 F.3d 1138, 1149 (9th Cir.

24   2000) ("one error is not cumulative error").

25       Here, Petitioner has failed to demonstrate cumulative error warranting habeas

26   relief.  At most, as discussed above, <u>see</u> *supra* at 14-16, the trial court erred by failing to

27   submit the question of aggravating factors to the jury.  However, this single non-

28   prejudicial error does not amount to cumulative error.  <u>Sager</u>, 227 F.3d at 1149.

1

2                          **CERTIFICATE OF APPEALABILITY**

3          The federal rules governing habeas cases brought by state prisoners have been

4   amended to require a district court that denies a habeas petition to grant or deny a

5   certificate of appealability ("COA") in its ruling.  <u>See</u> Rule 11(a), Rules Governing §

6   2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).  Petitioner has not

7   shown "that jurists of reason would find it debatable whether the petition states a valid

8   claim of the denial of a constitutional right [or] that jurists of reason would find it

9   debatable whether the district court was correct in its procedural ruling."  <u>Slack v.</u>

10  <u>McDaniel</u>, 529 U.S. 473, 484 (2000).  Accordingly, a COA will be denied.

11

12                                 **CONCLUSION**

13         The Court concludes that Petitioner has not shown any violation of his federal

14  constitutional rights in the underlying state criminal proceedings.  Accordingly, the

15  petition for a writ of habeas corpus is denied.  The Clerk shall enter judgment and close

16  the file.

17         IT IS SO ORDERED.

18  DATED: _____7/1/10_____          _____

19                                          JEREMY FOGEL
                                            United States District Judge

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

MIGUEL E DIAZ,

                Petitioner,

  v.

TOM CAREY, Warden,

                Respondent.
_____/

Case Number: CV06-03162 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____7/20/10_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Miguel E. Diaz T-83077
CA State Prison
2100 Beabody Road
6-102 Lower
Vacaville, CA 95687

Dated: _____7/20/10_____

                           Richard W. Wieking, Clerk